UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

JOANNE B.,[1]

       Plaintiff,

v.                                      Civil Action No. 2:21-cv-348

COMMISSIONER OF
SOCIAL SECURITY,

       Defendant.

## REPORT AND RECOMMENDATION

Plaintiff Joanne B. seeks judicial review of the Commissioner of Social Security's denial of her claim for disability benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act. Specifically, Plaintiff claims that the Administrative Law Judge ("ALJ") erred in evaluating opinion evidence from a state agency psychologist, and therefore failed to account for all of her mental limitations in his residual functional capacity ("RFC") finding. This action was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C), and Rule 72(b) of the Federal Rules of Civil Procedure. As set out in detail below, this Report finds no error in the ALJ's assessment of the opinion or other evidence, and therefore recommends the court affirm the Commissioner's finding that Plaintiff was not disabled.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

## I.    **PROCEDURAL BACKGROUND**

Plaintiff initially filed for DIB and SSI, (R. 228-38), alleging disability beginning January 1, 2018, based on post-traumatic stress disorder (PTSD), depression, anxiety, mini-stroke, and paranoia. (R. 260). The state agency denied her application initially and on reconsideration. (R. 83-147). Plaintiff then requested an administrative hearing, which was held via telephone on August 19, 2020. (R. 53-82). Plaintiff was represented at the hearing, and a vocational expert ("VE") testified. (R. 55). On September 15, 2020, the ALJ denied Plaintiff's claims for DIB and SSI, finding she was not disabled during the period alleged. (R. 13-25). On April 20, 2021, the Appeals Council denied Plaintiff's request for review. (R. 1).

On June 23, 2021, Plaintiff filed her complaint in this court, contending that "[t]he conclusions and findings of fact of the Defendant are not supported by substantial evidence and are contrary to law and regulation." Compl. ¶ 8 (ECF No. 1). As the court directed, Plaintiff moved for summary judgment, specifically arguing that the case should be reversed or remanded because the ALJ failed to properly evaluate the opinion evidence offered by a state agency psychological examiner, and therefore failed to fully account for Plaintiff's mental limitations in his RFC assessment and hypotheticals posed to the VE. Pl.'s Mem. Supp. Summ. J. ("Pl.'s Mem.") (ECF No. 21, at 6). The Commissioner opposed Plaintiff's motion and also moved for summary judgment. (ECF No. 21). The Commissioner argues that the ALJ properly evaluated the opinion evidence and fully accounted for Plaintiff's mental limitations in the RFC. Def.'s Mem. Supp. Summ. J. & Opp'n Pl.'s Mot. Summ. J. ("Def.'s Opp'n") (ECF No. 23, at 1-2). After a review of the record, this Report considers each of these arguments.

## II.    FACTUAL BACKGROUND

Plaintiff was born in 1969, and at the time of the ALJ's decision, she was 51 years old.  (R. 267, 23).  She meets the insured status requirements under the Social Security Act until March 31, 2023.  (R. 15-16).  She completed the ninth grade, as well as vocational training to become a Personal Care Attendant ("PCA") through South Geriatric Nursing School.  (R. 61).  She reported past work as a cook and PCA, and at the time of the hearing she was working 25 to 28 hours per week at Burger King.  (R. 58-59, 61, 273).

### A.    Plaintiff's Mental Health Treatment and Medical Findings

Plaintiff's arguments in this court do not require a complete review of her medical history, and the summary below describes treatment and diagnoses related to her mental health impairments.

### 1.    Mental Health Treatment

Plaintiff has a history of depression, which she treated through her primary care providers and occasional counseling.  (R. 366-73, 392-421, 462-66).  Her condition was aggravated by her daughter's suicide in early 2017.  (R. 366-71).  In March 2017, after a visit with her primary care physician, Plaintiff presented at South Hampton Memorial Hospital with complaints of depression and possible suicidal ideation.  Id.  She reported feeling hopeless but denied present thoughts of suicide then or in the past.  (R. 462).  She was observed in no apparent distress, but her affect was crying and tearful.  (R. 462).  She was provided resources for grief counseling and a prescription for Ativan to help her sleep.  (R. 463).  She was discharged to home the same day with "no functional or cognitive deficits."  (R. 464).

On August 11, 2017, Plaintiff returned to her primary care providers with complaints of crying spells, isolation, irritability, and weight gain, and described excessive alcohol consumption.  (R. 410).  She reported thinking she "doesn't want to be here anymore because this world isn't

fair," but she stated she had no suicidal plan. (R. 411). She stated she had outbursts when she "really gives it to" her boyfriend or son. Id. But she was working 25 hours per week at Burger King. (R. 415). Her mental status exam that day revealed a moderately depressed mood, blunt affect, and lethargy. (R. 419). Yet she had normal speech, good recall, fair judgment, and she was well groomed with only moderate anxiety. Id. She stated her drinking had increased, and acknowledged her substance abuse was a problem, and she wanted help. (421). She again denied thoughts of suicide, and her providers recommended she undergo detox, followed by a full psychiatric evaluation. Id.

After the August 2017 visit, there are no records of mental health treatment until July 2018, when she again presented with complaints of depression. (R. 436-47). She described crying spells, isolation, and drinking two-to-three 40-ounce beers per day. (R. 446). Her mental status exam again revealed good recall, and she was cooperative with a moderately depressed mood and a restricted (tearful) affect. (R. 445). Her providers again recommended therapy to address her symptoms of grief and PTSD as well as her attempts to self-medicate with alcohol and marijuana. (R. 447). She reported no anxiety, was well groomed with normal speech, good insight, and fair judgment. (R. 445).

On August 15, 2018, Plaintiff again reported depression during her annual checkup. (R. 363). She described being "down" and "depressed" with difficulty falling asleep. Id. She was prescribed Sertraline and directed to continue her efforts to pursue individual therapy. (R. 364). Following the August 2018 annual checkup, the Administrative Record contains no further record of mental health treatment until Plaintiff's consultative examination on June 19, 2019, in connection with her application for benefits. (R, 509-13).

Plaintiff next sought treatment for mental health on April 28, 2020. (R. 620-31). At that time she reported isolating behavior, tearfulness, poor sleep, and feeling "antsy" or "uneasy" as though someone wanted to "get her." (R. 620). But her mental status exam found her alert and cooperative with an appropriate affect, normal speech, and good recall. (R. 628). Her provider described her mood as "Depressed: minimum," noting her suspicions of people's intentions and avoidance of relationships. (R. 629).

## 2.   Administrative Medical Findings

Plaintiff underwent a psychological consultative exam on June 19, 2019, with agency examiner Randy Rhoad, Psy.D. (R. 509-13). During the exam, Dr. Rhoad observed "a very mild odor of alcohol," and Plaintiff reported drinking approximately half a beer prior to arriving. (R. 509). She presented with a blunted affect and stated that she had difficulty sleeping and bad dreams. (R. 511). Plaintiff described regular social activity with a male friend. Id. She was able to prepare basic meals and complete activities of daily living, including performing self-help tasks. (R. 510). She was dressed appropriately with adequate hygiene, grooming, and generally responded directly without tangential verbalization. (R. 510-11). Dr. Rhoad observed normal speech, adequate eye contact, goal-directed thoughts, adequate impulse control, insight, and judgment. (R. 511). However, Plaintiff showed signs of impaired memory, retaining zero of three objects after a three-minute delay, and only one object three minutes later. Id. She misspelled the word "world" backward, and she incorrectly described how much change she would receive given a simple math problem. Id. Dr. Rhoad observed "mild-to-moderate deficits with certain aspects of cognitive functioning, including short-term memory and immediate memory, as well as focus and concentration." Id. He found she had low-average to average intellectual functioning but

noted "a possible accentuation of some of her symptoms," given that she could not successfully complete a very basic task designed to assess consistency of symptoms and effort. Id.

Dr. Rhoad opined that Plaintiff was capable of performing some level of moderately detailed tasks in a work setting; based on her responses, and the moderate deficits he observed with short-term memory, and perhaps concentration and attention, he opined she would require a moderate degree of extra assistance and supervision to complete tasks, but would be capable of accepting instructions from supervisors. (R. 513). He wrote that:

> She likely is capable of basic interaction with others in the work setting. Her current ability to deal with stress in an ongoing basis is in question, the examiner perceives that she likely will experience a marked degree of difficulty dealing with stressors during the course of a normal work schedule. She will likely experience a moderate-to-marked degree of difficulty completing tasks throughout a typical workday or work week on a continual basis at the current time.

Id.

On June 26, 2019, Leslie E. Montgomery, Ph.D., a state agency psychological consultant, reviewed the existing record. (R. 93-95). Dr. Montgomery found that Plaintiff had "moderate" limitations in her ability to understand and remember and carry out detailed instructions, and in her ability to maintain attention and concentration for extended periods. (R. 93). The narrative stated:

> The claimant has deficits in short term and immediate memory. She appears capable of performing simple tasks. She appears capable of performing detailed tasks but may require additional supervision.

Id.

On October 15, 2019, Howard Leizer, Ph.D., another state agency psychological consultant, reviewed the existing record. (R. 126-28). He found that Plaintiff had severe depressive impairments that resulted in moderate limitations in her ability to understand, remember, or apply information; and moderate limitations in her ability to interact with others;

concentrate, persist, or maintain pace; and adapt or manage oneself.  (R. 126-27).  Dr. Leizer found no significant limits on Plaintiff's ability to maintain a schedule and sustain a routine without special supervision.  (R. 127).  He wrote that Plaintiff could "carry out 1-2 step simple instructions, perform on a schedule, sustain a routine, work around others, and make decisions."  Id.  He also found she had a "[l]imited ability to carry out detailed instructions, maintain extended (greater than 2 hr. periods) attention/concentration and completing [sic] a normal work week...."  Id.

**B.      Testimony Before the ALJ**

The ALJ questioned Plaintiff at the hearing on August 19, 2020.  (R. 53-82).  The ALJ also examined Vocational Expert ("VE") Paul Anderson.  (R. 78-81).

**1.      Plaintiff's Testimony**

On direct questioning by the ALJ, Plaintiff testified that she was working between 25 and 28 hours per week at Burger King and had been for the past year.  (R. 58-59).  She stated that she drives herself to work with no problems.  (R. 61-62).  She testified that she lives in a second-story apartment with no elevators.  (R. 60).

On examination by her representative, Plaintiff testified that she completed the ninth grade, and she later trained in her PCA program at South Geriatric Nursing School.  (R. 61).  When asked why she felt she could not work, Plaintiff primarily described her back pain.  (R. 62).

With respect to her mental health, she testified that her anxiety keeps her from driving out of town, and that she was "depressed every day."  Id.  She had occasionally missed work because of depression, but she generally worked 6:30 a.m. to 2:00 p.m. on days she was scheduled.  (R. 63).

She described taking medication for her mental health, which did not cause side effects. (R. 72).  She also stated she was seeing a therapist or psychiatrist every two weeks for an hour, which she stated helped her condition.  Id.

### 2.    Testimony from the VE

The ALJ then posed a hypothetical for the VE, positing a person with the same age, education, and work experience as Plaintiff with the following limitations:

> Person would be able to perform work at a medium exertion level.  Work that is limited to simple and routine tasks involving only simple, work-related decisions, and with few if any workplace changes ... [and] only occasional interaction with the public and supervisors.

(R. 78).   The VE testified that jobs would be available to such a person, identifying sexton (a janitor at a church) (DOT 389.667-010) with 60,000 jobs nationally; laundry worker II (DOT 361.685-018), with 34,000 jobs nationally; and cleaner II (DOT 919.687-014) with 150,000 jobs nationally.  (R. 79).  On examination by Plaintiff's representative, the VE also testified that a person off task more than 15 percent of time or having 2 or more absences per month would eliminate all jobs available in the national economy.  (R. 79-80).

### III.   STANDARD OF REVIEW

In reviewing a decision of the Commissioner denying benefits, the court is limited to determining whether the decision was supported by substantial evidence on the record and whether the proper legal standard was applied in evaluating the evidence.  42 U.S.C. § 405(g); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)).  An evidentiary threshold described as "hot high,"

consists of "more than a mere scintilla" of evidence. Id. But the evidence may be somewhat less than a preponderance. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

The court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Hays, 907 F.2d at 1456. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." Craig, 76 F.3d at 589. The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed. Biestek, 139 S.Ct. at 1153; Perales, 402 U.S. at 390; see also Lewis v. Berryhill, 858 F.3d 858, 868 (4th Cir. 2017). Ultimately, reversing the denial of benefits is appropriate only if either the ALJ's determination is not supported by substantial evidence on the record, or the ALJ made an error of law. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

## IV.    ANALYSIS

Plaintiff's brief identifies only one alleged error in the ALJ's decision that she claims warrants remand. She contends that the ALJ's RFC findings are unsupported by substantial evidence because he erred in analyzing opinion testimony regarding her mental limitations, and therefore failed to account for certain limitations in the RFC determination. See Pl.'s Mem. (ECF No. 21, at 6). As explained below, this Report finds no error in the ALJ's analysis, including the ALJ's assessment of the opinion evidence from state agency psychological consultants. The Report also finds no error in the ALJ's RFC formulation, including his decision not to impose additional restrictions to account for Plaintiff's modest mental limitations. Accordingly, this Report concludes that remand is not warranted, and therefore recommends that the court affirm the Commissioner's decision.

A.      **Framework for SSA Disability Evaluation**

Title XVI of the Act provides SSI benefits to "financially needy individuals who are aged, blind, or disabled regardless of their insured status." <u>Bowen v. Galbreath</u>, 485 U.S. 74, 75 (1988) (citing 42 U.S.C. 1382(a)).   As relevant here, the Act defines "disability" as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."   42 U.S.C. § 1382c(a)(3)(A)); <u>accord</u> 20 C.F.R. § 416.905(a).  An impairment renders an individual disabled only if it is so severe as to prevent the person from engaging in his or her prior work or any other substantial gainful activity that exists in the national economy.   <u>See</u> 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a).

SSA regulations set out a sequential analysis which ALJs use to make their determination. 20 C.F.R. § 416.920(a)(4).  Specifically, the regulations direct the ALJ to answer the following five questions:

1.      Is the individual involved in substantial gainful activity?

2.      Does the individual suffer from a severe impairment or a combination of impairments that meets the durational requirement and significantly limits his or her physical or mental ability to do basic work activities?

3.      Does the individual suffer from an impairment(s) that meets or equals a listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (a "listed impairment") and meets the durational requirement?

4.      Does the individual's impairment or combination of impairments prevent him or her from performing any relevant past work?

5.      Does the individual's impairment or combination of impairments prevent him or her from performing any other work?

An affirmative answer to question one, or a negative answer to questions two, four, or five, means the claimant is not disabled.  An affirmative answer to questions three or five establishes

disability. The claimant bears the burden of proof during the first four steps. If the analysis reaches

step five, the burden shifts to the Commissioner to show that other work suitable to the claimant

is available in the national economy. See Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995); Jolly

v. Berryhill, No. 16-cv-38, 2017 WL 3262186, at *6 (E.D. Va. July 13, 2017).

      The SSA considers all material evidence in evaluating whether a claimant is disabled. 20

C.F.R. §§ 416.920(a)(3); 416.920b. This includes "(1) the objective medical facts; (2) the

diagnoses and expert medical opinions of the treating and examining physicians; (3) the subjective

evidence of pain and disability; and (4) the claimant's educational background, work history, and

present age." Jolly, 2017 WL 3262186, at *6 (citing Hayes v. Gardner, 376 F.2d 517, 520 (4th

Cir. 1967)). Ultimate responsibility for making factual findings and weighing the evidence rests

with the ALJ. Hays, 907 F.2d 1453, 1456 (4th Cir. 1990) (citing King v. Califano, 599 F.2d 597,

599 (4th Cir. 1979)).

**B.**    **The ALJ Decision.**

      At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity ("SGA")

from her alleged disability onset date until the hearing date. (R. 16). The opinion noted that

Plaintiff worked for several employers after onset, but her earnings did not rise to SGA level. Id.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments:

degenerative disc disease; major depressive disorder, PTSD, and alcohol use disorder. Id. At step

three, the ALJ found that Plaintiff did not suffer from a listed impairment or combination of

impairments that met or medically equaled the severity of one of the listed impairments. (R. 16-

18). The ALJ then developed a finding regarding Plaintiff's RFC. (R. 18-23). He determined

Plaintiff was able

      to perform medium work as defined in 20 [C.F.R. §] 404.1567(c) and [§]
      416.967(c). Additionally, work is limited to simple and routine tasks involving

only simple work-related decisions, and with few, if any, workplace changes. She
can tolerate only occasional interaction with public and supervisors.

(R. 18). At step four, the ALJ concluded that Plaintiff had no past relevant work but relied on VE

testimony to identify jobs in the national economy which Plaintiff could perform, including,

sexton, laundry worker II, and cleaner II. (R. 24). At step five, the ALJ found that Plaintiff was

not disabled. Id.

## C.    The ALJ Did Not Err in Analyzing Opinion or Other Evidence of Plaintiff's Mental Impairments.

Plaintiff's appeal does not contest her exertional limitation to medium work but focuses

primarily on the ALJ's RFC finding in which he assessed the persuasive force of opinion testimony

related to Plaintiff's mental impairments. See Pl.'s Mem. (ECF No. 21, at 8). She mainly objects

to the ALJ's evaluation of Dr. Rhoad's opinion concluding that Plaintiff required extra supervision

only for moderately difficult tasks. Id. (citing R. 22). She also contends the ALJ did not

adequately justify his rejection of certain marked limitations in Dr. Rhoad's opinion. Id. at 9. She

criticizes the ALJ's assessment of these opinions as "lackluster and confusing," asserting it fails

to build a logical bridge to his conclusions. Id. Had the limitations been found more persuasive,

she contends, her mental impairments may have met the requirements of a listing or required more

specific, work-precluding restrictions. Id. at 11-12. The Commissioner observes that the ALJ

followed the new regulations for evaluating all medical opinion testimony, and explained how Dr.

Rhoad's more severe restrictions lacked consistence and supportability in the other medical

evidence. [2] Def.'s Opp'n (ECF No. 23 at 16, 19).

---

[2] On January 18, 2017, the SSA adopted new rules for considering medical opinions and prior administrative medical findings. 20 C.F.R. § 404.1520c. The new rules apply to all claims filed after March 27, 2017. Id. Because Plaintiff filed her claim on January 18, 2019, (R. 203), the new rules apply.

Under the rules in effect for Plaintiff's claim, the ALJ does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) . . . ." 20 C.F.R. § 404.1520c(a). Instead, the ALJ considers their overall "persuasiveness," id., and while the ALJ may consider many factors in evaluating persuasiveness, he or she must explain only "the most important factors" of "supportability and consistency," id. § 404.1520c(b)(2). The ALJ is not required to make detailed findings on evidence he finds neither valuable nor persuasive. Id.

With regard to "supportability," the new regulations explain that "the more relevant the objective medical evidence in supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." Id. 404.1520c(c)(1). Evaluating consistency involves the same inquiry: "The more consistent a medical opinion or prior administrative medical finding is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion or prior administrative medical finding will be." Id. § 404.1520c(c)(2). When the ALJ evaluates the evidence using the proper standard, this court should affirm as long as substantial evidence supports the ALJ's conclusions. 42 U.S.C. § 405(g); Biestok v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

Contrary to Plaintiff's arguments, the ALJ's analysis of the medical opinions in her case complied with the rules and built the logical bridge required by Fourth Circuit precedent. To begin with, the ALJ did not reject Dr. Rhoad's opinions entirely, but found them persuasive to the extent he found Plaintiff capable of completing tasks in the workplace and accepting instructions from supervisors. (R. 22). He also credited Dr. Rhoad's findings that Plaintiff was moderately impaired by short-term memory deficits and concentration limits that would require extra supervision if she

were assigned moderately difficult tasks. Id. These limitations, which are addressed in the RFC's limitation to only "simple work-related decisions," are consistent with Dr. Rhoad's observed performance on cognitive tests.

But the ALJ was "not persuaded" by Dr. Rhoad's conclusion that Plaintiff had marked limitations dealing with stressors or completing tasks throughout a normal workday. (R. 22-23). In so finding, the ALJ articulated the reasons he found such marked limitations inconsistent with the medical records. The ALJ's opinion noted that her treatment had been conservative and routine "with no significant objective findings documented by her providers despite the claimant's significant subjective allegation." (R. 23). If a claimant requires only conservative treatment, "it is reasonable for an ALJ to find the alleged disability is not as bad as the claimant says that it is." Dunn v. Colvin, 607 F. App'x 264, 274 (4th Cir. 2015). In this case, Plaintiff treated her depression only sporadically during the period alleged. While her providers suggested more intensive therapy, there are no records of group or individual counseling of the type suggested. See, e.g., (R. 421, 447). In addition to her failure to pursue any recurring individual or group therapy, she was generally observed to have few cognitive symptoms, despite her obvious and understandable grief over losing her daughter. See, e.g., (R. 464, 419, 445, 511). This evidence supports the ALJ's finding that Dr. Rhoad's most serious limitations were inconsistent with her treatment history.

While Plaintiff takes issue with the ALJ's citation to certain benign findings, her brief ignores the most salient evidence cited by the ALJ in support of his persuasiveness evaluation. Specifically, Plaintiff's treating providers never observed that she had difficulty completing tasks, and she maintained a relatively demanding part-time employment schedule, which, as the ALJ noted, "demonstrated an ability to perform tasks when necessary." (R. 23).

      iii.    **The ALJ's Finding Was Not Infected by Cherry-Picking, or Mischaracterized Opinion Testimony.**

Plaintiff also asserts that the ALJ cherry-picked the evidence and mischaracterized Dr. Rhoad's opinion testimony to support the RFC finding. Pl.'s Mem. (ECF No. 21, at 10-11). Cherry-picking occurs when an ALJ "locate[s] a single treatment note that purportedly undermines [the treatment provider's] overall assessment of [the plaintiff's] functional limitations . . . ." Hudson v. Colvin, No. 12-cv-269, 2013 WL 6839672, at *8 (E.D.N.C. Dec. 23, 2013) (quoting Punzio v. Astrue, 630 F.3d 704, 710 (7th Cir. 2011)). Mischaracterization involves misleading record citations which do not accurately represent the treatment history. Arakas v. Comm'r, SSA, 983 F.3d 83, 99, 102 (4th Cir. 2020) (finding that the ALJ errs when misstating or mischaracterizing facts).

In this case, the ALJ found Dr. Rhoad's opinion less than fully persuasive, citing records from Plaintiff's treating providers that did not indicate any deficits in completing tasks. He also noted that she maintained part-time employment "which demonstrated an ability to perform tasks when necessary." (R. 23). He also observed that her mental health treatment involved only medication and counseling with no intensive treatment. Id. While Plaintiff complains that the ALJ cited only these findings which support the RFC, she points to no specific medical record, or contrary evidence that undermines the ALJ's resolution of the conflicts in the evidence. See Pl.'s Mem. (ECF No. 21, at 10). The record Plaintiff does cite includes her poor performance on tests of short-term memory, and her self-reports of irritability, feelings of isolation, and crying spells. Id. But her mental status exams recorded by her doctors based on their observations consistently demonstrated her to be cooperative with good recall, normal speech, coherent thought, and fair judgment and only moderate anxiety. (R. 419). Indeed, the only purely negative finding on the mental status exam is the one cited by Plaintiff—a suggestion that her level of consciousness was

lethargic. Pl.'s Mem. (ECF No. 21, at 11). While it is true the ALJ did not mention this finding in assessing her medical record, it hardly amounts to cherry-picking given that nearly all of the other findings in the same exam support his conclusions on consistency and supportability with respect to Dr. Rhoad's finding of marked limitations. See (R. 419). The rules do not require the ALJ to comment on "every piece of evidence," and his mention of the medical providers' assessments did not cherry pick only supportive observations. See Forehand v. Astrue, No. 4:11CV58, 2012 WL 3912763, at *7 (E.D. Va. July 5, 2012), R. & R. adopted by 2012 WL 3912760 (Sept. 7, 2012) (citing Denton v. Astrue, 596 F.3d 419, 425 (7th Cir.2010); McCain v. Astrue, No. 4:11CV69, 2012 WL 928504, at *7 (E.D. Va. Feb. 22, 2012)). The ALJ cited multiple records of treatment and the contrary opinions of both disability examiners in evaluating Dr. Rhoad's opinions regarding Plaintiff's mental impairments. (R. 21-22).

Likewise, the ALJ did not mischaracterize Dr. Rhoad's opinion. In assessing its persuasive force, the ALJ clarified that he understood Dr. Rhoad's limitation requiring extra supervision to apply to "moderately difficult tasks." (R. 22). Plaintiff disagrees, asserting that Dr. Rhoad's opinion could be read as suggesting she would need extra supervision to complete tasks in general, and not only moderately difficult tasks. Pl.'s Mem. (ECF No. 21, at 8). After reviewing Dr. Rhoad's report in detail, I agree with the Commissioner that the ALJ's interpretation did not mischaracterize the opinion. Dr. Rhoad specifically wrote that Plaintiff was "capable of performing some level of moderately difficult tasks in work settings." (R. 513). He then specified that certain deficits would require a moderate degree of extra supervision to complete those tasks before also stating Plaintiff was capable of accepting instructions from supervisors and basic interaction with co-workers. Id. The ALJ's interpretation is consistent with the language Dr. Rhoad employed. Moreover, both agency reviewers stated that Plaintiff would require extra

supervision with difficult tasks, but she would be capable of simple tasks. (R. 94, 127). In reaching his RFC finding, the ALJ found these consultant opinions persuasive as they were consistent with, and supported by, the objective medical record. (R. 22).

The ALJ does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) . . . ." 20 C.F.R. § 404.1520c(a). Instead, the ALJ considers their overall "persuasiveness," id., and while the ALJ may consider many factors in evaluating persuasiveness, he or she must explain only "the most important factors" of "supportability" and "consistency," id. § 404.1520c(b)(2). Here, the ALJ did not avoid his responsibility for assessing the evidence by mischaracterizing it. Instead, he appropriately analyzed the opinion testimony, resolving any conflicts by assessing the relative persuasive force of each opinion. The ALJ thus adequately considered Plaintiff's limitations in light of her entire treatment record, and he was not required to incorporate each limitation observed by any individual provider into the RFC. And his finding that Plaintiff's mental impairments would be accommodated by the RFC restrictions he imposed is supported by substantial evidence.

## V.    RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the court GRANT the Commissioner's Motion for Summary Judgment (ECF No. 22), DENY Plaintiff's Motion for Summary Judgment (ECF No. 20), and AFFIRM the Commissioner's finding of no disability.

## VI.    REVIEW PROCEDURE

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.      Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date this report is forwarded to the objecting party by Notice of Electronic Filing or mail, see 28 U.S.C.

§ 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure.  Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail.  A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof.  See Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

      2.     A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

      The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this court based on such findings and recommendations.  Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

March ___, 2022