IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| JOANNE B.,[1] | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    Civil Action No. 2:21CV348 (RCY) |
| | ) |
| KILOLO KIJAKAZI,[2] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
|     Defendant. | ) |

**MEMORANDUM OPINION**
**(Adopting Report and Recommendation of the Magistrate Judge)**

This matter is before the Court on a Report and Recommendation ("R&R," ECF No. 25) from United States Magistrate Judge Douglas E. Miller filed on March 29, 2022, pursuant to 28 U.S.C. § 636(b)(1)(B). The Magistrate Judge's R&R addresses the parties' cross-motions for summary judgment (ECF Nos. 20, 22), which Plaintiff and Defendant respectively filed on January 11, 2022, and February 8, 2022. Plaintiff objected to the R&R, and Defendant responded (ECF Nos. 26, 27). The Court will dispense with oral argument because the facts and legal contentions are fully developed, and argument would not aid the Court in its decisional process. E.D. Va. Loc. Civ. R. 7(J).

"A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b)(3); *Nichols v. Colvin*, 100 F. Supp. 3d 487, 497 (E.D. Va. 2015) ("[T]he objection requirement is designed to allow the district court

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] Kilolo Kijakazi is the Acting Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

to 'focus on specific issues, not the report as a whole.'" (quoting *United States v. Midgette*, 478 F.3d 616, 621 (4th Cir. 2007))). In conducting its review, the Court may accept, reject, or modify, in whole or in part, the Magistrate Judge's recommended disposition of the case. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3).

The R&R thoroughly details the factual and procedural history of this matter. (R&R at 2-8, ECF No. 25.) This matter involves Plaintiff's application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act (the "Act"). (*Id.* at 1); s*ee* 42 U.S.C. §§ 405(g) and 1383(c)(3). Plaintiff alleged disability beginning on January 1, 2018. (R&R at 2.) She alleged disability "based on post-traumatic stress disorder (PTSD), depression, anxiety, mini-stroke, and paranoia." (*Id.*) Plaintiff's application was denied, both initially and upon reconsideration. (*Id.*) An Administrative Law Judge ("ALJ") then held a hearing at Plaintiff's request on August 19, 2020. (*Id.*) The hearing was held via telephone, Plaintiff was represented by counsel, and a vocational expert ("VE") testified. (*Id.*) On September 15, 2020, the ALJ denied Plaintiff's claims for DIB and SSI, finding that she was not disabled during the period alleged. (*Id.*)

The ALJ followed a five-step evaluation process, pursuant to Social Security Administration regulations, in making the disability determination. (*Id.* at 10); *see Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) ("[T]he ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the regulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the regulations; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work."); 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4).

"At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity ("SGA") from her alleged disability onset date until the hearing date." (R&R at 11.) Next, "[a]t step two, the ALJ found that Plaintiff had suffered from the following severe impairments: degenerative disc disease; major depressive disorder, PTSD, and alcohol use disorder." (*Id*.) Then, "[a]t step three, the ALJ found that Plaintiff did not suffer from a listed impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments." (*Id*.) After step three, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform medium work, as follows. He determined Plaintiff was able

> to perform medium work as defined in 20 [C.F.R. §] 404.1567(c) and [§] 416.967(c). Additionally, work is limited to simple and routine tasks involving only simple work-related decisions, and with few, if any, workplace changes. She can tolerate only occasional interaction with public and supervisors.

(*Id*. at 11-12.) (citation to Record omitted.) The ALJ determined at step four that Plaintiff "had no past relevant work but relied on VE testimony to identify jobs in the national economy which Plaintiff could perform, including, church janitor, laundry worker II, and cleaner II. (*Id*. at 12.) At step five, the ALJ found that Plaintiff was not disabled. (*Id*.)

On April 20, 2021, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final determination of the Commissioner. (*Id.* at 2); *see* 42 U.S.C. §§ 405(g) & (h), 1383(c)(3); 20 C.F.R. § 404.981; 20 C.F.R. § 416.1481.

Plaintiff then sought review of the ALJ's decision in this Court, filing her Complaint on June 23, 2021. (ECF No. 1.)

The Magistrate Judge considered the challenges brought by Plaintiff. In the Complaint, Plaintiff claimed that the "conclusions and findings of fact of the Defendant are not supported by substantial evidence and are contrary to law and regulation." (Compl. ¶ 8.)

3

In her motion for summary judgment, Plaintiff argues specifically that "[t]he ALJ's RFC determination is unsupported by substantial evidence as the ALJ failed to weigh the opinion evidence in accordance with the prevailing rules and regulations." (Pl.'s Mem. Supp. Mot. Summ. J. at 1, 6, ECF No. 21; *see also* R&R at 9.) The Magistrate Judge first addressed the applicable framework and the ALJ's decision. (R&R at 10-12.) Then, he addressed Plaintiff's contentions regarding "the ALJ's RFC finding in which he assessed the persuasive force of opinion testimony related to Plaintiff's mental impairments," and "the ALJ's evaluation of Dr. Rhoad's opinion concluding that Plaintiff required extra supervision only for moderate tasks." (*Id*. at 12 (citing Pl.'s Mem. Supp. Mot. Summ. J. at 8-9).) The Magistrate Judge also noted Plaintiff's criticisms of the ALJ – that "the ALJ did not adequately justify his rejection of certain marked limitations in Dr. Rhoad's opinion," and that "the ALJ's assessment of these opinions [was] 'lackluster and confusing,' asserting [the ALJ's assessment] fails to build a logical bridge to his conclusions." (*Id*. (citing Pl. Mem. Supp. Mot. Summ. J. at 9-12).) The Magistrate Judge next noted the Commissioner's "observ[ation] that the ALJ followed the new regulations for evaluating all medical opinion testimony, and explained how Dr. Rhoad's more severe restrictions lack consistence and supportability in the other medical evidence." (*Id*. (citing Def,'s Mem. Supp. Mot. Summ. J. at 16, 19, ECF No. 23).)

The Magistrate Judge explained that, on January 18, 2017, "the SSA adopted new rules for considering medical opinions and prior administrative medical findings" that applied to Plaintiff's case. (R&R at 12 n.2.) He explained that under the new rules, the ALJ does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) . . . ." (*Id*. at 13 (citing 20 C.F.R. § 404.1520c(a)).) Instead, the Magistrate Judge notes, "the ALJ considers their

4

overall 'persuasiveness,'" and "must explain only 'the most important factors' of 'supportability and consistency.'" (*Id*. (citing 20 C.F.R. §§ 404.1520c(a) & 404.1520c(b)(2)).) Based on the regulations with regards to evaluating supportability and consistency, the Magistrate Judge noted that "[w]hen the ALJ evaluates the evidence using the proper standard, this court should affirm as long as substantial evidence supports the ALJ's conclusions." (*Id*. (citing 20 C.F.R. §§ 404.1520c(c)(1) & 404.1520c(c)(2); 42 U.S.C. § 405(g); *Biestok v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)).)

The Magistrate Judge determined that "the ALJ's analysis of the medical opinions in her case complied with the rules and built the logical bridge required by Fourth Circuit precedent." (*Id*.) He noted that "the ALJ did not reject Dr. Rhoad's opinions entirely, but found them persuasive" to a certain extent, giving them some credit. (*Id*.) The Magistrate Judge also noted that to the extent "the ALJ was 'not persuaded' by Dr. Rhoad's conclusion," the ALJ explained the reasons for doing so. (*Id*. at 14.) The evidence supported "the ALJ's finding that Dr. Rhoad's most serious limitations were inconsistent with [Plaintiff's] treatment history." (*Id*.) The Magistrate Judge also pointed out that Plaintiff "ignores the most salient evidence cited by the ALJ in support of his persuasiveness evaluation," that "Plaintiff's treating providers never observed that she had difficulty completing tasks, and she maintained a relatively demanding part-time employment schedule, which, as the ALJ noted, 'demonstrated an ability to perform tasks when necessary.'" (*Id*.) The Magistrate Judge also examined Plaintiff's claim that "[t]he ALJ cherry-picked the evidence and mischaracterized Dr. Rhoad's opinion testimony to support the RFC finding." (*Id*. at 15.) He noted that Plaintiff does not point to a "specific medical record, or contrary evidence that undermines the ALJ's resolution of the conflicts in the evidence," and concludes that there was no cherry-picking and no mischaracterization. (*Id*. at 15-16.) After reviewing Dr.

5

Rhoad's report, the Magistrate Judge agreed with the ALJ's interpretation of the report and found that it did not mischaracterize Dr. Rhoad's opinion that Plaintiff could perform "some level of moderately difficult tasks in work settings." (*Id.* at 16.) (citation to Record omitted). The Magistrate Judge concluded that the ALJ "was not required to incorporate each limitation observed by any individual provider," "appropriately analyzed the opinion testimony," and resolved "conflicts by assessing the relative persuasive force of each opinion." (*Id.* at 17.)

Accordingly, the Magistrate Judge recommended to the Court, pursuant to 42 U.S.C. § 405(g), that Plaintiff's Motion for Summary Judgment be denied, that Defendant's Motion for Summary Judgment be granted, and that the final decision of the Commissioner be affirmed. (*Id.*); *see* 42 U.S.C. § 405(g) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.").

On April 12, 2022, Plaintiff filed her Objection to the Magistrate Judge's R&R. (Obj., ECF No. 26.) Plaintiff sets forth her Objection as: "the ALJ [im]properly considered Dr. Rhoad's opinion evidence in determining that Plaintiff was not disabled." (*Id.* at 1.) She contends that the ALJ wrongly characterized Plaintiff's mental health treatment as "conservative and routine" and that the Magistrate Judge erred in asserting that there are no records of counseling because Plaintiff has records regarding her time with Western Tidewater CSB. (*Id.* at 1-2.) Further, Plaintiff notes that the "ALJ's reliance on Plaintiff's past part time work was misleading as he ignored Plaintiff's reports that she experienced significant symptoms while working and had to excuse herself at times." (*Id.* at 2.) She continues that the ALJ "failed to explain what examinations he was referring to and did not

6

build a logical bridge between [his conclusion that Plaintiff had no deficits in completing tasks] and the evidence." (*Id.* at 3.)

Additionally, she contends that the ALJ overly relied "on benign findings, such as being adequately dressed and groomed," and "pick[ed] and cho[]se only the evidence supporting his conclusion." (*Id.* at 3.) She highlights some of the evidence that she believes the ALJ did not properly consider:

> Plaintiff appeared with low average-to average intellectual functioning skills. She showed an impaired memory during the evaluation as she retained zero of three objects to memory after a three-minute delay. Three minutes later, she retained only one of the objects to memory. Plaintiff reported she could not calculate serial three subtractions. She misspelled the word "world" backwards and incorrectly calculated how much change she would receive when given a simple monetary math problem. Additionally, Dr. Rhoad's opinions are consistent with evidence from Plaintiff's treating providers, including consistent reports of symptoms including crying spells, paranoia, isolation, irritability, excessive worry, and flashbacks. Dr. Rhoad's opinions are also consistent with Plaintiff's own reports in her function report, where she reported she "cant take" stress, has difficulty with changed in routine, gets angry with people, and does not trust people.

(*Id.* at 4.) (citations to Record omitted). Plaintiff notes several times that she believes the Magistrate Judge "glaze[d] over" the ALJ's incorrect application of the regulations in evaluating the evidence and that the decision is not supported by substantial evidence. (*Id.* at 5.) Thus, Plaintiff asks the Court to reject the R&R and reverse the ALJ's decision denying benefits. (*Id.*)

The Defendant disagrees with the Objection. In her response, Acting Commissioner Kijakazi contends first that Plaintiff's objections to the R&R are improper because they are the same arguments she made in the summary judgment briefs. (Resp. to Obj. at 1, ECF No. 27.) She notes that "where a plaintiff merely restates his prior arguments, the Court is not required to conduct a de novo review of the findings in the R&R and need only review the R&R using a 'clear error' standard." (*Id.* at 2.)

The Defendant also contends that the ALJ followed "appropriate regulations when assessing the opinion of Dr. Rhoad, did not cherry-pick evidence, and built a logical bridge from the evidence that permitted meaningful review." (*Id.* at 3.) She notes that "conservative and routine" was a proper characterization of Plaintiff's medical treatment because:

> The records to which Plaintiff cites in no way show that Plaintiff "engaged" in counseling. The evidence shows Plaintiff participated in pre-admission and initial screenings at Western Tidewater CSB in 2017 and was recommended to undergo a detox, full psychiatric evaluation, ongoing substance abuse services, and individual services. There are no records showing she received these services, and Plaintiff was discharged in 2018. She then had another intake in July 2018 and was discharged in October 2018 for not showing / noncompliance. There are no counseling records from 2018. Finally, Plaintiff had an initial assessment in April 2020, but there are no records of counseling services in 2020.

(*Id.* at 3.) The Defendant also contends that the ALJ did not cherry-pick or ignore evidence because he "cited records that did not indicate deficits in completing tasks" and relied on findings that characterized her as "alert, oriented, pleasant, able to respond to questions directly and without tangents, and able to repeat four digits forward and three digits backward, with adequate impulse control and intact insight and judgment." (*Id.* at 4.) Further, she notes that the ALJ did adequately discuss and analyze all of Dr. Rhoad's findings, including those that suggested that Plaintiff did need support. (*Id.* at 5.) Lastly, the Defendant contends that the ALJ "addressed the conflicting evidence, provided sufficient discussion to allow for judicial review, and cleared the 'not high' bar for substantial evidence, which provided a logical bridge between the evidence and his findings." (*Id.* at 5.) Specifically, she notes that the ALJ found parts of Dr. Rhoad's testimony persuasive but also addressed the limitations of her testimony when compared to the fact "that treating providers never observed difficulty completing tasks and Plaintiff maintained a 'relatively demanding part-time employment schedule.'" (*Id.* at 6.) (internal citations omitted).

When reviewing the decision of an ALJ, the reviewing court "must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (alteration in original) (quoting *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001)). When assessing "substantial evidence," the Court looks for "evidence which a reasoning mind would accept as sufficient to support a particular conclusion," which is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). In 2019, the Supreme Court confirmed that the substantial-evidence standard "is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It explained that "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Id.* (alteration in original) (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. Even more recently, in 2020, the Supreme Court reaffirmed that the substantial-evidence standard is "highly deferential," explaining that "[t]he agency's 'findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020) (citing 8 U.S.C. § 1252).

The Court cannot "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Johnson*, 434 F.3d at 653 (second alteration in original) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)); *see also Biestek*, 139 S. Ct. at 1156 (referring to the substantial evidence standard as "deferential"); *Nasrallah*, 140 S. Ct. at 1692 (referring to the standard as "highly deferential"). "[However, a] factual

9

finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (citations omitted).

In line with this standard, having reviewed the record, Plaintiff's Objection, and the Magistrate Judge's detailed R&R, this Court finds that the Magistrate Judge applied the proper standard and that there is substantial evidence in the record to support the ALJ's findings of fact and conclusions of law as to the arguments asserted by Plaintiff, which were properly considered and rejected by the Magistrate Judge. Accordingly, Plaintiff's Objection will be overruled.

For these reasons, the Court hereby ACCEPTS and ADOPTS the Magistrate Judge's R&R (ECF No. 25). Plaintiff's Motion for Summary Judgment, (ECF No. 20), will be denied, and Defendant's Motion for Summary Judgment, (ECF No. 22), will be granted. The final decision of the Commissioner will be affirmed.

An appropriate Order will accompany this Memorandum Opinion.

/s/ *[signature]*
Roderick C. Young
United States District Judge

Richmond, Virginia
Date: August 29, 2022